SMITH, RESPONDENT, v. COLLIS ET AL., APPELLANTS.

(No. 2,902.)

(Submitted November 18, 1910. Decided December 12, 1910.)

[112 Pac. 1070.]

*Default   Judgments—Vacation—Discretion—Summons—Service by Publication—Affidavit of Merits—Contents.*

Summons by Publication—Statutory Construction.
    1. *Held*, that the requirement of section 6521, Revised Codes, that where publication of summons is necessary it must be made "once a week for four successive weeks," is satisfied by publication thereof once in each of four successive weeks, and that such provision does not mean that the period of publication must cover four full weeks, or twenty-eight days.

Affidavits—Information and Belief—Sufficiency.
    2.   Where the statute, either in express terms or by implication, requires a sworn statement as to facts which it is impossible to make in any other manner than on information and belief, an affidavit in that form meets the demands of such statute.

Summons by Publication—Affidavit—Information and Belief—Sufficiency.
    3. *Held*, under the rule declared in paragraph 2 above, that the statements required by section 6520, Revised Codes, of one who desires an order for the publication of summons on a nonresident defendant, *viz.*, that the plaintiff has a cause of action against defendant and that the latter is a necessary or proper party to the action, may properly be made on information and belief.

Default Judgments—Vacation—Affidavit of Merits—Conclusiveness.
    4.   In passing upon the sufficiency of an affidavit of merits filed in support of a motion to set aside a default judgment, the district court will confine itself to an investigation thereof with a view to determining whether a *prima facie* defense is made out, and will not examine it to ascertain whether, taking the statements therein contained as true, plaintiff in alleging certain matters in his complaint and affidavit for publication of summons practiced deceit upon the court in procuring the order for publication.

Same—Vacation—Summons—Constructive Service—Discretion.
    5. *Held*, that the application of a defaulting nonresident defendant not personally served with summons, like that of one who has been personally served but who, through mistake, inadvertence, surprise or excusable neglect suffered default to be taken against him, to have the judgment set aside, is addressed to the sound legal discretion of the district court, and that the movant must show (1) that he did not have actual notice of the pendency of the action in time to make a defense, (2) that he proceeded promptly to have the default set aside, (3) that he has *prima facie* a defense upon the merits, and (4) that the judgment, if permitted to stand, will affect him injuriously.

Same—Summons—Constructive Service—Mail—Presumptions.
    6.   Defendants, to each of whom copies of the summons and complaint were mailed at their known places of residence, are presumed, under section 7962, Revised Codes, to have had actual notice of the pendency of the action.

Same—Vacation—Insufficient Showing.
7.  Where nonresident defendants, upon whom constructive service
of summons had been had, after default moved the court to set
aside the judgment but failed to make a showing that they proceeded
promptly for vacation of the default, and as proof of the fact that
they did not have actual notice of the pendency of the action in time
to make a defense offered the affidavit of a resident who could speak
only from information and belief, the court *held* not to have abused
its discretion in refusing to set aside the judgment.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by A. L. Smith against Rosell C. Collis and others. From an order refusing to set aside a default judgment, defendants appeal. Affirmed.

*Messrs. H. G. & S. H. McIntire* submitted a brief in behalf of Appellants, and one in reply to that filed by respondent. *Mr. H. G. McIntire* argued the cause orally.

The motion in this case was a direct and not a collateral attack on the judgment herein. (*People* v. *Greene,* 74 Cal. 400, 5 Am. St. Rep. 448, 16 Pac. 197; *People* v. *Davis,* 143 Cal. 673, 77 Pac. 651.) This being so, any infirmity in the steps taken which led up to the judgment, whether the same appears from the statutory judgment-roll or from matter appearing of record in the court below and not a part of such judgment-roll, and even matters of fact *dehors* the record, are proper to be considered. (*Rue* v. *Quinn,* 137 Cal. 651, 66 Pac. 216, 70 Pac. 732; *People* v. *Mullan,* 65 Cal. 396, 4 Pac. 348; *Norton* v. *Atchison, T. & S. F. R. Co.,* 97 Cal. 388, 33 Am. St. Rep. 198, 30 Pac. 585, 32 Pac. 452; *People ex rel. Schwartz* v. *Temple,* 103 Cal. 447, 37 Pac. 414; *Furman* v. *Furman,* 153 N. Y. 309, 60 Am. St. Rep. 629, 47 N. E. 577; *Barber* v. *Morris,* 37 Minn. 194, 5 Am. St. Rep. 836, 33 N. W. 560.) There is nothing to the contrary of this in *Haupt* v. *Simington,* 27 Mont. 480, 94 Am. St. Rep. 839, 71 Pac. 672, and *Burke* v. *Interstate S. Co.,* 25 Mont. 315, 87 Am. St. Rep. 416, 64 Pac. 879; indeed, those cases sustain the position.

The statutory provisions for acquiring jurisdiction over a defendant by constructive service of summons must be strictly

pursued.   (1 Black on Judgments, sec. 232; *Palmer* v. *McMaster,* 8 Mont. 192, 19 Pac. 585.)   A judgment void on its face will be set aside, at any time, whenever the court's attention is called to its invalidity.   (*People* v. *Davis, supra; People* v. *Greene, supra; State* v. *District Court,* 38 Mont. 166, 129 Am. St. Rep. 636, 99 Pac. 294.)

The affidavit of publication of summons was defective.   It appears affirmatively therefrom that the publication was continued for twenty-one days, or three weeks only.   But the statute (Revised Codes, sec. 6521) requires the publication to be made "at least once a week for four successive weeks."   In *McLean* v. *Moran,* 38 Mont. 298, 99 Pac. 836; this court, in construing the statutes in question here, said: "The person so served [by publication of summons] shall have the full period of four weeks and twenty days within which to make his appearance." (See, also, *Market Nat. Bank* v. *Pacific.Nat. Bank,* 89 N. Y. 397; *Cadman* v. *Smith,* 15 Okl. 633, 85 Pac. 348; *Foster* v. *Vehmeyer,* 133 Cal. 459, 65 Pac. 974.)

That the order for publication of summons was void, see *Park* v. *Higbee,* 6 Utah, 414, 24 Pac. 525.

As the foundation of his authority to make the order for publication the clerk under Revised Codes, section 6520, must have before him an affidavit which shall state "that a cause of action exists against the defendant and that he is a necessary or proper party to the action."   In the present instance the two ultimate facts as to the existence of a cause of action and that defendants are necessary parties to the action are stated on information and belief.   Where a statute authorizing publication of summons requires an affidavit to state a fact positively, a statement on information and belief is insufficient.   (See 32 Cyc. 480; *Columbia Screw Co.* v. *Warner Lock Co.,* 138 Cal. 445, 71 Pac. 498.) Inasmuch as the statute requires these facts to be shown by the affidavit, recourse can be had to no other papers or evidence to supply its omissions.   (*Rue* v. *Quinn,* 137 Cal. 651, 66 Pac. 216, 70 Pac. 732.),

This attempted judgment should have been set aside because of deceit practiced in procuring the order of publication. It is generally held that in taking a judgment by default on constructive service of process, the utmost candor must be shown on the part of the plaintiff to the court. (*Dunlap* v. *Steere,* 92 Cal. 344, 27 Am. St. Rep. 143, 28 Pac. 563; see, also, footnote to this case in 16 L. R. A. 361, and cases there cited.) For the purposes of the motion, the allegations of the affidavit in support thereof are to be taken as true, if they entitle the moving parties to any relief, for the rule is universal that on an application to set aside a judgment countervailing affidavits are not competent on the hearing of the motion. (23 Cyc. 953, 958; 6 Ency. of Pl. & Pr. 158, 159; *Francis* v. *Cox,* 33 Cal. 323; *Gracier* v. *Weir,* 45 Cal. 54; *McLaughlin* v. *Nettleton* (Okl.), 105 Pac. 662; *Butte Butchering Co.* v. *Clarke,* 19 Mont. 306, 48 Pac. 393.) The right and duty to set aside a judgment obtained under circumstances like those presented here is inherent in all courts. It is dependent on no statute, and action can be invoked at any time, even, as the California cases hold, ten, eleven and more years after the pretended judgment was entered.

If the foregoing should not be considered sufficient to demonstrate that the judgment in question is void, a nullity, then recourse is open to the moving parties, appellants, by the provisions of section 6589 of the Revised Codes, having to do with defendants upon whom there has been constructive service of summons and who have defaulted. In *Gray* v. *Lawlor,* 151 Cal. 352, 90 Pac. 691, 12 Ann. Cas. 990, the decision is based on facts similar to those here shown. There it was held that appellant was entitled as a matter of absolute right to have the judgment vacated and set aside, and that the court was without any discretion in the premises. This case has been at least twice affirmed and followed by the California supreme court, *viz.,* in *Lilly-Brackett Co.* v. *Sonniman,* 157 Cal. 192, 106 Pac. 716, where the statute is again elaborately considered; and in *Holiness Church etc.* v. *Metropolitan Church Assn.* (Cal. App. 1910), 107 Pac. 633. (See, also, 1 Black on Judgments, sec. 312.)

From these authorities it is clear that the moving party, to have the benefit of the statute, has but to show in his affidavit that he has a meritorious defense to the action; and, second, that his application was made in time.

In behalf of Respondent, there was a brief by *Messrs. Gunn & Hall,* and *Mr. E. C. Day. Mr. M. S. Gunn* argued the cause orally.

Neither the affidavit for publication of summons nor the order for publication are a part of the judgment-roll, and cannot be considered in determining whether or not a judgment is void on its face. (Revised Codes, sec. 6806; *People* v. *Davis,* 143 Cal. 673, 77 Pac. 651; *People* v. *Temple,* 103 Cal. 447, 37 Pac. 414; *Parsons* v. *Weis,* 144 Cal. 410, 77 Pac. 1007.) It is also well settled that a judgment can be shown to be void on its face by the judgment-roll only. (*Haupt* v. *Simington,* 27 Mont. 480, 94 Am. St. Rep. 839, 71 Pac. 672; *Burke* v. *Interstate Saving Co.,* 25 Mont. 315, 87 Am. St. Rep. 416, 64 Pac. 879.) As the affidavit and order for publication are not a part of the judgment-roll, it follows that the judgment in this case is not void on its face, and can only be set aside on motion under the circumstances within the time provided in section 6589.

Appellant's position is that service by publication is not complete until after the expiration of twenty-eight days from the date of first publication, and that the defendant has twenty days thereafter in which to answer. The case of *McLean* v. *Moran,* 38 Mont. 298, 99 Pac. 836, is cited as an authority sustaining appellant's construction of the statute. There is nothing in the language of the opinion to warrant the conclusion that the court intended to disregard the last sentence of section 6521, which expressly declares that "the service of summons is complete on the day of the fourth publication." In fact, the court in the opinion in effect holds that the service is complete on the day of the fourth publication.

If it were not for the last sentence in section 6521, there might be some merit in appellants' construction of the phrase "at

least once a week for four successive weeks," which appears in
the section, as the authorities are in conflict in their construc-
tion of statutes containing the above phrase alone. Several
states hold, however, that even under such a statute the service
is complete on the day of the last publication. (See *Calvert* v.
*Calvert,* 15 Colo. 390, 24 Pac. 1043; *Davis* v. *Huston,* 15 Neb.
28, 16 N. W. 820; *Banta* v. *Wood,* 32 Iowa, 469; *Knowlton* v.
*Knowlton,* 155 Ill. 158, 39 N. E. 595; *Swett* v. *Sprague,* 55 Me.
190; *Marling* v. *Robrecht,* 13 W. Va. 440; *Alexander* v. *Alexan-
der,* 26 Neb. 68, 41 N. W. 1065; *Haywood* v. *Russell,* 44 Mo. 252;
*Lowenstine* v. *Gillespie,* 6 Lea (Tenn.), 641.) Appellants con-
strue the phrase "at least once a week for four successive weeks,"
as if it read, "once a week for *at least* four successive weeks."
The difference in these two phrases was clearly pointed out in
*Early* v. *Doe,* 16 How. 610, 14 L. Ed. 1079.

Appellants' second contention is that the order of publication
fails to comply with the statute. If a summons is published
four times and in successive weeks, it certainly has been pub-
lished "once a week for four successive weeks." It is impossible
to comply with such order without complying with the statute.
It is not necessary that the publication should be on the same
day of each week so long as it is published at least once each
week for four successive weeks. (*Raunn* v. *Leach,* 53 Minn. 84,
54 N. W. 1058; *Wood* v. *Knapp,* 100 N. Y. 109, 2 N. E. 632;
*State* v. *Yellow Jacket Min. Co.,* 5 Nev. 415; *Konkendorf* v. *Tay-
lor,* 4 Pet. (U. S.) 349, 7 L. Ed. 882; *Savings & Loan Soc.* v.
*Thompson,* 32 Cal. 347; *State* v. *Superior Court,* 6 Wash. 352,
33 Pac. 827; *In re State of New Orleans,* 52 La. Ann. 1073, 27
South. 592; *Leach* v. *Burr,* 188 U. S. 512, 23 Sup. Ct. 393, 47
L. Ed. 567.) While some of the above authorities hold that
the word "week" means calendar week, and that the publication
must be on the same day of each calendar week during the period,
our statute provides that a week consists of seven consecutive
days instead of a calendar week. (Revised Codes, sec. 2030.)
Therefore, the case of *Raunn* v. *Leach,* and other cases above,
which hold that each successive week begins on the day of the

week of the first publication, are directly in point under our statute.

It is contended in support of the motion that the affidavit for publication of summons was insufficient, for the reason that it was not stated therein that a cause of action existed against the defendants nor that the defendants were necessary or proper parties to the action. The form of statement used was the form adopted and approved by Mr. Estee in his work on Pleadings, fourth edition (Volume 2, page 915). The same form of affidavit is approved in Mr. Sutherland's new work on Code Pleading, adapted to the practice in Montana and other western states. (See, also, *Leigh* v. *Green,* 62 Neb. 344, 89 Am. St. Rep. 751, 86 N. W. 1093, s. c., 64 Neb. 533, 101 Am. St. Rep. 592, 90 N. W. 255; *Woodward* v. *Brown,* 119 Cal. 283, 63 Am. St. Rep. 108, 51 Pac. 2, 542; *In re Keller,* 36 Fed. 681.) Where a person gives the sources of his information and refers to documents setting forth the facts upon which he bases his information, as was done in the affidavit in the case at bar, so that the officer to whom the affidavit was presented may judge whether his information and belief have a proper basis to rest on, the affidavit is sufficient. (*Buell* v. *Van Camp,* 119 N. Y. 165, 23 N. E. 538; *Bennett* v. *Edwards,* 27 Hun, 352; *De Weerth* v. *Feldner,* 16 Abb. Pr. 295; *Simpkins* v. *Malatt,* 9 Ind. 543.) In *Champ* v. *Kendrick,* 130 Ind. 549, 30 N. E. 787, the court said: "An affidavit sworn to upon the belief of a party is equivalent to swearing that it is true." An affidavit in the language of the statute is but the statement of an opinion. Such an affidavit is not as strong as one stating the facts and sources of information from which the opinion is formed. (*Kennedy* v. *Lamb,* 182 N. Y. 228, 108 Am. St. Rep. 800, 74 N. E. 834.)

Where it is sought to take advantage of the last provision of section 6589, Revised Codes, and obtain relief against a judgment upon the ground that there has not been personal service of summons, the power conferred upon the court must be exercised within the year. (*Knox* v. *Clifford,* 41 Wis. 458; *Nicklin* v. *Robertson,* 28 Or. 278, 52 Am. St. Rep. 790, 42 Pac. 993;

*Holmes* v. *Campbell,* 13 Minn. 66; *Underwood* v. *Dollins,* 47 Mo. 259.) In *Woolley* v. *Woolley,* 12 Ind. 663, the application was filed the day before the year expired. The lower court set aside the judgment the day after the year expired, and the supreme court reversed the holding. In the case at bar, notice was given that a motion to vacate the judgment would be made on the 14th of June, one day before the year expired. As a matter of fact, the motion was not made on that day but was made several days after the expiration of the year. Under these circumstances the application was properly denied, for the reasons, first, because not submitted within a year, and, second, because the jurisdiction of the court to grant the relief asked for had expired.

If the defendants had actual notice of the pendency of the action in the early part of the month of May, 1909, then there has been such laches that the court properly exercised its discretion in denying the application, even though the provision of the statute authorizing the vacation of a judgment within one year applies. (*Cutler* v. *Button,* 51 Minn. 550, 53 N. W. 872; *Bogart* v. *Kiene,* 85 Minn. 261, 88 N. W. 748; *Mueller* v. *McCulloch,* 59 Minn. 409, 61 N. W. 455; *Roller* v. *Ried* (Tex. Civ. App.) 24 S. W. 655.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On April 30, 1909, A. L. Smith commenced an action in the district court of Lewis and Clark county against Rosell C. Collis and Mary Collis to quiet title to certain real estate situate in the city of Helena. On May 1, Smith made and filed an affidavit for publication of summons, in which, among other things, it is alleged that the defendants are nonresidents of Montana and reside at Canastota, Oneida county, New York. On the same day the clerk of the court issued an order for publication, which directs that summons be published in the "Montana Daily Record" "at least in four numbers of said paper, which shall be published in successive weeks." Proof of publication was made by the foreman of the paper by affidavit, in which it is

stated that a copy of the summons was published in "the regular and entire issue of said paper for a period of four consecutive weeks, commencing on the third day of May, 1909, and ending on the twenty-fourth day of May, 1909." The clerk of the court also made affidavit that on May 1 he "deposited in the United States postoffice at Helena, Lewis and Clark county, Montana, in separate envelopes securely sealed, with the postage prepaid, a copy of the complaint and summons thereto annexed, one directed to Rosell C. Collis, Canastota, Oneida county, New York, and one directed to Mary Collis, Canastota, Oneida county, New York." On June 15 the default of defendants was entered for want of any appearance, and a decree in conformity with the prayer of the complaint was rendered and entered. On June 10, 1910, the defendants and W. R. Church, who claims to be a grantee of defendants, filed in court their motion to set aside the decree, open the default, and permit defendants to answer, and gave notice of such motion to plaintiff. On the same day the court fixed June 14 as the date for hearing the motion. On this last day the court was engaged in the trial of jury cases, and for that reason the hearing was continued by consent of the parties to July 2. On June 14 plaintiff filed a counter-affidavit in opposition to the motion. On July 2 the motion was submitted and on July 15 denied by the court. From the order denying the motion, the defendants and Church appealed. We agree with counsel for appellants that in this proceeding they are making a direct attack upon the validity of the judgment of the lower court.

1. The first ground of attack is that the summons was not published for the period required by law. As we understand counsel for appellants, their contention is that the period of publication must cover four full weeks, or twenty-eight days. Section 6521, Revised Codes, provides that the summons shall be published "once a week for four successive weeks." In construing statutes containing similar provisions, different courts have reached different conclusions. *Market National Bank* v. *Pacific National Bank*, 89 N. Y. 397, and *Calvert* v. *Calvert*, 15 Colo. 390,

24 Pac. 1043, represent the extremes of these views. In New York it is held that a provision of the statute for publication "once a week for six successive weeks" contemplates "a full six weeks' publication, and not six times in six different weeks." In Colorado the court held that the provision of the Code of Civil Procedure of that state of 1877 (section 42), for a service of summons by publishing it "once a week for four successive weeks," does not mean four weeks of seven days each, and that the publication is completed on the day on which the summons is published in the fourth successive week, although less than twenty-eight days have elapsed since it was first published.

If our Code section, above, contained no other provision than the one quoted, we might experience some difficulty in determining its meaning. But to our minds the section itself furnishes the key to its own proper interpretation, in the last sentence which reads: "The service of summons is complete on the day of the fourth publication." This is a legislative declaration that only four publications are required, if there is one in each of four successive weeks. "A week consists of seven consecutive days." (Revised Codes, sec. 2030.) "The time in which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last is a holiday, and then it is also excluded." (Sections 6219, 8067.) Every Sunday is a holiday. (Section 8065.) For the purpose of illustrating our view, let us assume that publication is made on the same day in each of four successive weeks, as, for instance, on the 3d, 10th, 17th and 24th. The greatest period of time which can elapse between the first and fourth publications is twenty-one days, under the rule of computation prescribed by the Code above. Or assume the most extreme case which we can imagine: That the publication occurred on the 4th (although that day is Sunday), 13th, 22d, and 31st of the present month of December, 1910. The greatest period of time which can elapse between the first and fourth publications is twenty-seven days, according to the same rule. Since section 6521 requires only four publications, and requires that there shall be at least one in each of

four successive weeks, it is self-evident that the statute does not contemplate that there shall be a period of four weeks or twenty-eight days, elapse between the first and fourth publications, as such a thing is absolutely impossible. Since, then, the statute cannot mean that a full period of four weeks, or twenty-eight days, must be covered by the publication, there remains but one other interpretation to be given to the language employed, *viz.*, the publication must occur four times, once in each of four successive weeks, using the term "week" as defined in the Code. The proof of publication in this instance shows a compliance with the law as thus construed.

Appellants refer to *McLean* v. *Moran*, 38 Mont. 298, 99 Pac. 836, as supporting their contention. In that case the question now before us was not involved or considered. The controversy there arose over the meaning to be given to the sentence in section 6521 above, which reads: "When publication is ordered, personal service of a copy of the summons and complaint out of the state is equivalent to publication and deposit in the postoffice." That a construction of this language was the only matter for determination will appear conclusively from the opinion. (Page 299.) The defendants in that case were non-residents. An order for the publication of summons was regularly made, but personal service was had upon the defendants in Pennsylvania, under the sentence of the section just quoted. The plaintiff had a copy of the summons and complaint delivered to defendants on April 16, 1908, and their default was entered on May 8. The lower court held that the default was entered prematurely, and this view we adopted; in doing so, however, we inadvertently said: "The person so served shall have the full period of four weeks and twenty days within which to make his appearance." We should have said: "The person so served shall have the full period of publication and twenty days within which to make his appearance." If in view of the one question considered in that case a modification of our holding is necessary, it is now made to conform to the suggestion above.

2. What· we have said disposes of the contention made that the order for publication is not sufficient. While the order does not follow the exact language of the statute, its meaning is the same. If the summons was published four times, once in each of four successive statutory weeks, it was sufficient, and this is what the order directed should be done.

3. Objection is made to the affidavit for publication upon the ground that the statements (1) that the plaintiff has a cause of action against the defendants, and (2) that defendants are necessary or proper parties to the action, are made upon information and belief. Paraphrased, section 6520 of the Revised Codes reads: ''When the person on whom the service of a summons is to be made  resides out of the state, and an affidavit stating this fact is filed with the clerk, and such affidavit also states that a cause of action exists against such nonresident defendant, and that he is a necessary or proper party to the action, the clerk shall cause the service to be made by publication.'' It is insisted that the statute requires each of the statements above to be made positively, or, in other words, as we understand this contention, it is that the party making the affidavit must make each of these statements as a fact of his own knowledge, and in this view counsel for appellants are not altogether without authority to support them. (*Columbia Screw Co.* v. *Warner Lock Co.*, 138 Cal. 445, 71 Pac. 498.) The reasoning of that case, however, does not appeal to us. To illustrate our view further: Let us assume that Smith, the plaintiff in this action, had stated positively in his affidavit for publication that a cause of action exists against the defendants Rosell C. Collis and Mary Collis, and that each is a necessary or proper party to this  action. Assume, then, that the defendants had appeared and raised the question of the sufficiency of the complaint (which we will assume stated all the facts correctly) and also the question of proper or necessary parties defendant, and the court had decided, first, that the complaint did not state a cause of action, and, second, that neither defendant was a necessary or proper party to the action, and this decision became final, could anyone claim

that Smith had committed perjury? If so, and if the statute does in fact require such statements to be made positively, then we may confidently assert that nearly every person who makes such an affidavit commits perjury, because "an unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false." (Revised Codes, sec. 8241.) From the very nature of things, one cannot know in advance absolutely that a cause of action exists against a particular person, or that a named person is a necessary or proper party to a certain action. The questions whether a given statement of facts constitutes a cause of action, or a particular person is a necessary or proper party to the action, are questions of law pure and simple; and we have not yet reached that stage of perfection where any person, layman or lawyer, is so far infallible that he may not be mistaken upon a question of law. It is doubtless true that the plaintiff in an action to enforce payment of a plain, overdue promissory note, may assert confidently that a cause of action exists and that the maker is a necessary or proper party defendant; but the statute is not confined in its operations to simple actions of that kind. It extends to a variety of actions, some of which are of the most complicated known to the law. We do not believe the legislature intended to say to the litigant: "You are denied any relief in the courts against a nonresident, unless you are willing to swear to a statement you do not know to be true, which is equivalent to a statement of that which you know is not true." Considering this same question, the supreme court of Nebraska, in *Leigh* v. *Green,* 64 Neb. 533, 101 Am. St. Rep. 592, 90 N. W. 255, on rehearing said: "The statute should receive a construction in accordance with common sense. It was not intended to require perjury, and, as it requires affidavit to matters involving legal opinion and conclusions of law and fact, it must contemplate that such affidavit will be made upon the only basis on which such opinions and conclusions can be reached. * * * In a trial where numerous witnesses are successively examined, the several facts and circumstances may be made to appear by competent proof,

and the trier of fact may draw the proper inference therefrom. But where one man is to make affidavit to the conclusion, he must in fact state the belief which the information in his possession gives rise to, whether he expressly says so or not; otherwise, the required affidavit could never be made.''

Whenever the statute, either in express terms or by implication, requires a person to make a statement which from the very nature of things can only be made on information and belief, an affidavit in that form meets the demands of the statute. It is impossible for anyone to swear positively that a particular person is a nonresident of this state, or to say that a nonresident resides at a particular place. In requiring these facts to be stated, the statute does not demand the impossible, and certainly does not contemplate that a false statement shall be made. It does intend that the person making the affidavit for publication shall state these facts upon information and belief—the only possible ground upon which they can be made. In this present case the plaintiff in his affidavit refers to his complaint on file, and says: '' (3) I have fully and fairly stated the facts of the case to Messrs. Carpenter, Day & Carpenter, attorneys of this court in the city of Helena, Montana, my attorneys, and I am by them informed, and I verily believe, that I have a good cause of action in this suit against the said defendants, as will fully appear by my verified complaint herein, to which reference is hereby made, and the said defendants Rosell C. Collis and Mary Collis are necessary and proper parties defendant thereto, as I am advised by my said counsel after such statement made as aforesaid, and as I verily believe.''

We hold that the affidavit is sufficient, and the authorities sustaining this conclusion will be found in note to 17 Encyclopedia of Pleading and Practice, 61.

4. Appellants contend that the district court should have vacated the judgment, opened the default and permitted the defendants to answer, for the reason, as it is claimed, the record discloses that the plaintiff practiced deceit in procuring the order for publication. If we understand counsel for appellants

correctly, their contention is that in his complaint and affidavit for publication, plaintiff Smith made allegations as to his ownership of the land involved which were not true and which he could not have believed were true, and purposely omitted the statement of facts which he knew to be true, and which, if stated, would have shown that he did not have a cause of action, and that these facts appear from the affidavit filed by Church, for the defendants in support of their motion to vacate the judgment, and that for the purposes of this motion such affidavit is to be taken as true. If in a suit in equity to set aside a default judgment for fraud, it appeared from the evidence that plaintiff had knowingly misrepresented the facts, either by stating that which was known to be false or by suppressing a known truth, and by such misrepresentation had imposed upon the court or clerk in procuring the order for publication, the court would set aside the judgment. This is in effect the holding in *Dunlap* v. *Steere,* 92 Cal. 344, 27 Am. St. Rep. 143, 28 Pac. 563, 16 L. R. A. 361; but we do not understand the rule to be as stated by counsel for appellants that, on motion to set aside a default, the affidavit in support of the motion will be treated as true, in the sense that it demonstrates the falsity of plaintiff's complaint or affidavit for publication, or both, in so far as the allegations conflict. If that was true, then in every instance wherein defendant's affidavit conflicted with the affidavit for publication —and this would occur in practically every case—fraud on the part of the plaintiff in procuring the order would be established by an *ex parte* affidavit, even though a subsequent trial might demonstrate that the allegations in defendant's affidavit were not supported by the proof—were in fact untrue. It is the rule that upon a motion to set aside a default, the facts stated in the affidavit of merits *as the defense intended to be interposed,* cannot be controverted by a counter-affidavit, and this for the reason that on the hearing of the motion the court will not try the right of defendant upon the merits by *ex parte* affidavits, but will confine itself to an investigation of the affidavit of merits to see whether a *prima facie* defense is made out. (23 Cyc. 958;

*Butte Butchering Co.* v. *Clarke,* 19 Mont. 306, 48 Pac. 303.)
Beyond this the rule does not go; and neither the trial court
nor this court will convict the plaintiff of fraud or deceit in
advance of a judicial determination as to whether the allega-
tions of his complaint and affidavit for publication are true, or
whether the allegations in the affidavit made on behalf of de-
fendants are true.

5. It is insisted that the application to set aside the default
was not addressed to the discretion of the trial court, but should
have been granted as a matter of right.    Section 6589, Revised
Codes, provides: "(1) The court may likewise in its discretion
*   *   *   relieve a party   *   *   *   from a judgment   *   *   *
taken against him through his mistake, inadvertence, surprise
or excusable neglect.   *   *   *   (2) When from any cause the
summons in an action has not been personally served on the
defendant, the court may allow on such terms as may be just,
such defendant or his legal representative, at any time within
one year after the rendition of any judgment in such action,
to answer to the merits of the original action." This section
deals with two classes of persons; the first comprises defendants
who have been personally served with summons but through mis-
take, inadvertence, surprise or excusable neglect have defaulted.
As to this class the rule is uniform that a motion to set aside
the default is addressed to the sound, legal discretion of the trial
court, and to move such discretion in favor of the defaulted
party, he must present a valid excuse for his mistake, inadver-
tence or neglect; must show that he has moved promptly to set
aside the default; that he has *prima facie* a good defense on the
merits; and that the judgment against him, if permitted to
stand, will affect him injuriously.   (*Bowen* v. *Webb,* 34 Mont.
61, 85 Pac. 739.)   The second class of persons dealt with by the
section above comprises those defendants upon whom there has
been constructive service of summons and who have defaulted.
May a person belonging to this class have the default set aside
as a matter of right if he applies within one year from the date

of judgment, or is his application also addressed to the discretion of the court?

There are very few states which have statutes similar to our own. There are, therefore, few decided cases upon the question propounded. The statutes of Kansas, Nebraska and Iowa in terms confer the right upon defaulting defendants who bring themselves within the law. The statute of Tennessee presents some resemblance to the statutes of the states just named, but little, if any, to our own Code provision. The North Carolina statute is similar to the first portion of ours, but so far as our investigation discloses, it does not contain any provision corresponding to that portion of our Code section now under consideration. Minnesota has a provision somewhat similar to ours, and California a statute the same as our own. The Minnesota court first inclined to the view that an application under this provision of the law was addressed to the discretion of the court; but later, in *Lord* v. *Hawkins,* 39 Minn. 73, 38 N. W. 689, said: "The construction we place on section 66 is that it provides to the defendant who comes within its terms, and who shows that he has a good defense, and who has not lost his right by laches, an opportunity to defend as a matter of right, and not of discretion." In *Mueller* v. *McCulloch,* 59 Minn. 409, 61 N. W. 455, that court said: "Although an application of this character, made under the provisions of 1878, G. S., Chapter 66, section 66, is largely addressed to the discretion of the court, it ought not to be favorably considered when the presumption that the party in default has been diligent after receiving notice of the pendency of the action is expressly and conclusively rebutted, as it was in this instance." In *Bogart* v. *Kiene,* 85 Minn. 261, 88 N. W. 748, the court said: "The motion was made under the provisions of G. S. 1894, section 5206 [same as section 66 referred to in the last case]; and defendant insists that he was entitled to the relief asked for as a matter of right, and that the court erred in denying his motion. There is no question, under the decisions of this court, that an application for leave to defend, where default judgment has been entered

on service of the summons by publication, is not addressed to the discretion of the court; but the relief is granted as a matter of right where the application is seasonably made. If defendant makes a proper motion to set aside the judgment, is not guilty of laches in doing so, and presents an answer setting forth a good defense to the action, the judgment is set aside, and defendant let in to defend, as a matter of right, and not of discretion; but if he be guilty of laches and unnecessary delay in making his application, he loses his absolute right to be relieved from his default, and can be relieved only by excusing his default, and addressing his application to the discretion of the court under section 5267." To the same effect is *Cutler* v. *Button,* 51 Minn. 550, 53 N. W. 872. In each of these last three cases relief was denied the defaulting defendant on account of unreasonable delay in making his motion, even though the motion was submitted within the year allowed by the statute; in fact, in *Mueller* v. *McCulloch* the motion was made only twenty-seven days after judgment, while in *Bogart* v. *Kiene,* the motion was made thirty-four days after entry of judgment.

After considering the decided cases from Kansas, Kentucky, Minnesota, Nebraska and North Carolina, Mr. Freeman in his work on Judgments says: "Notice of the defendant's application must be given to the adverse party, and the defendant must show that he had no actual notice of the pendency of the action in time to appear and make his defense. On complying with the conditions of the statute, the moving party secures an absolute right to have the judgment opened, which the court has no discretion to deny." (1 Freeman on Judgments, 4th ed., sec. 105.) In California the same doctrine is announced, except that the burden is placed upon the plaintiff to show laches on the part of defendant. (*Gray* v. *Lawlor,* 151 Cal. 352, 90 Pac. 691, 12 Ann. Cas. 990.) The practical effect of the California court's holding is that the defendant, who has not been personally served with summons, shall have at least one year more time within which to answer to the merits than is given to a defendant personally served, although the statute prescribes that in either case the

defendant shall have only twenty days after service of the summons within which to appear. We do not think that such meaning can be given to the language of the statute. Section 6589 refers to every defendant who may have been served by publication or its equivalent; and if any one of those thus included may assert his right to answer after judgment as a matter of right, then everyone who may thus be served may likewise make the same claim. A defendant residing in this state who conceals himself to avoid personal service of summons may be served by publication. (Section 6520.) Would anyone say that a defendant resident of this state, who has actual knowledge of the pendency of an action against him, and who willfully conceals himself to avoid personal service of summons, can come into court after he defaults, and assert as a matter of right his application to have the default set aside? We think not. We decline to place an interpretation upon the statute which will lead to a result so ridiculous. This illustration is used to show the far-reaching effect of the contention made by counsel for appellants; for the nonresident defendant not personally served stands upon the same footing, under the statute, as the resident defendant who has willfully concealed himself to avoid service of summons, so far as the right to appear and answer after judgment by default is concerned; that is to say, if the statute grants the relief as a matter of right to the one, it grants it to the other as well. Section 6589 does not provide that the defaulting defendant *shall be* permitted to answer, but only that the court *may* allow him to answer. We do not think there is any substantial difference between the two provisions of this section; certainly not such a difference as to call for a different rule as to the character of application or the burden of proof. We think in either instance the application is addressed to the sound, legal discretion of the trial court. If personal service was had, the defaulting defendant may excuse his default by showing that it was taken through mistake, inadvertence, surprise or excusable neglect. If service was had by publication or its equivalent, the defaulting party ought to show that he did

not have actual notice of the pendency of the action in time to defend. This does not impose any hardship upon him. In either case the defaulting party ought to show that he moved promptly upon discovering that default had been taken against him; that he has a good defense upon the merits, and that the judgment, if allowed to stand, will prejudicially affect him. We do not see any reason for making the distinction between the two classes of persons which is made by some of the courts.

In justification of its position, the California court in the case above said: "Where he [nonresident defendant] has had no personal service, there is, with respect to his right to relief in such cases, no presumption of knowledge, or of inexcusable· negligence, on his part, and he is only required to show the lack of personal service." That may or may not be true. Section 6521 above provides: "In case of publication, where the residence of a nonresident or absent defendant is known, the clerk must forthwith deposit a copy of the summons and complaint in the postoffice, directed to the person to be served at his place of residence." Section 7962 provides that it will be presumed "that a letter duly directed and mailed was received in the regular course of the mail." The record in this case discloses that on the day after this action was commenced, the clerk of the court in Helena mailed to each of the defendants at his known place of residence a copy of the summons and complaint, and the presumption, therefore, must be indulged that defendants had actual notice of the pendency of this action a considerable time before their default was entered. In a case of this character, then, the rule announced by the California court does not have application; while in Minnesota, Iowa, Kansas, Nebraska and Texas actual knowledge on the part of the nonresident defendant has been quite uniformly held to be sufficient to defeat an application to set aside a default after judgment. (*Clark* v. *Tull*, 113 Iowa, 143, 84 N. W. 1030; *Stover* v. *Hough*, 47 Neb. 789, 66 N. W. 825; *Bogart* v. *Kiene*, above; *Cutler* v. *Button*, above; *Satterlee* v. *Grubb*, 38 Kan. 234, 16 Pac. 475; 23 Cyc. 915; 1 Black on Judgments, sec. 313.)

42 Mont.—24

.Assuming, then, that this application was addressed to the discretion of the trial court, does the record disclose an abuse of such discretion? The affidavit in support of the motion is made by W. R. Church, who asserts, among other things, that neither defendant received a copy of the summons and complaint, and that neither knew of the pendency of the action until long after the judgment was rendered; but he does not state how long after. He does not assume to state when defendants first learned of the default and judgment, and it is therefore impossible to know whether this motion was made immediately after such knowledge was acquired, or whether defendants delayed several months in making their application or in having it made. Furthermore, the assertion of Church that neither defendant received a copy of the summons and complaint must have been made only on information and belief. There is not any affidavit by either defendant—the only persons who could have known the facts—and there is not any excuse offered for their failure to disclose the facts as they are. In weighing the evidence before it, the court must have deemed this hearsay statement insufficient to overcome the evidence furnished by the clerk's affidavit and the presumption declared by the statute. Certainly, we cannot say that such a determination would not be justified; and since this court enters upon its investigation with a presumption that the trial court's ruling was correct, it will be upheld if it can be done upon any reasonable hypothesis.

Upon the theory of the statute which we adopt, a defaulting nonresident defendant not personally served must show (1) that he did not have actual notice of the pendency of the action in time to make a defense; (2) that he proceeded promptly to have the default set aside; (3) that he has a *prima facie* defense upon the merits; and (4) that the judgment, if permitted to stand, will affect him injuriously. In this view of the law, the appellants here failed to meet the second requirement altogether, and seek to show compliance with the first, by what, in the very nature of things, was hearsay evidence. We cannot say that

the trial court abused its discretion, and the order is therefore affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Smith concur.

